Shari Amster, Esquire (72742)                    Attorney for Plaintiff
Law Office of Shari Amster                        Hooked, Inc.
265 South 21st Street
Philadelphia, PA 19103
samster@amsterlaw.net
267.475.7401

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HOOKED, INC.                              :
2210 W. Westmoreland Street               :
Philadelphia, PA 19140                    :
                                          :    **CIVIL NO.**_____
                                          :
                    Plaintiff,            :
                                          :
    v.                                    :    **COMPLAINT**
                                          :
CITY OF PHILADELPHIA                      :
1515 Arch Street, 15th Floor              :
Philadelphia, PA 19107                    :
                                          :
                    Defendant.            :
                                          :

## COMPLAINT

1.    Plaintiff Hooked, Inc. ("Hooked") is a Pennsylvania corporation with its principal place of business at 2210 W. Westmoreland Street in Philadelphia, Pennsylvania. Hooked is in the business of, *inter alia,* towing motor vehicles.

2.    Defendant City of Philadelphia ("City") is a municipal entity with a place of business at 1515 Arch Street, Philadelphia, Pennsylvania.

## JURISDICTION

3.    This Court has jurisdiction over all claims pursuant to 28 U.S.C. §1331 because the Plaintiff's claims arise under the Constitution and laws of the United States including 42 U.S.C. §1983.

4.   Venue is proper pursuant to 28 U.S.C. § 1391(b) within this District as the events giving rise to the claims occurred in this District, a substantial part of the property that is subject to the action is situated in this District, and the defendant is a resident of the State in this District.

## FACTUAL BACKGROUND

5.   Hooked is a towing company as defined by the Philadelphia Code (the "Code") and thus subject to Code §9-605 (the "Towing Ordinance"). §9-605(2)(a).

6.   The Towing Ordinance defines a Consensual Tow as the "Towing of a vehicle by a towing company with the prior consent or authorization of the person who owns or otherwise legally controls the vehicle to be towed. Such prior consent or authorization shall be deemed to have been obtained if . . . the tow truck operator possesses (a) a consent form or agreement for towing, signed by the owner or operator of the towed vehicle." Code §9-605(2)(k).

7.   At all relevant times, the tows performed by Hooked were consensual tows as defined by the Towing Ordinance. Code §9-605(2)(k). Copies of the relevant Consensual Tow Agreements, signed by the owners or operators of the vehicles, are attached hereto as Exhibit "A" and incorporated herein by reference.

8.   Plaintiff receives a substantial portion of its gross revenues from consensually towed cars.

### The City's History with Consensual Towing Fees

9.   In 2002, Helmrich Transportation Systems, Inc., a towing company, sued the City and sought, *inter alia*, a declaratory judgment declaring that 49 U.S.C. §14501(c) preempted Code §9-605 sections that regulate or limit fees for consensual tows and

sought an injunction to enjoin the City from enforcing those provisions.[1] *Helmrich Transp. Sys. Inc. v. City of Phila.*, No. Civ.A.02-2233, 2004 WL 2278534, at *6 (E.D. Pa. Oct. 8, 2004).

10. On October 8, 2004, the Honorable Steward Dalzell issued an Order and Memorandum in *Helmrich* (the "Dalzell Order"). Judge Dalzell held, *inter alia,* that the City may not regulate or limit the fees for consensual tows. A copy of the Dalzell Order is attached hereto as Exhibit "B" and incorporated herein by reference. *See* pgs 14-15.

11. The Dalzel Order states, in pertinent part:

> 3. It is hereby DECLARED that 49 U.S.C. §14501(c) preempts Sections 9-605(6) and 9-605(3) [sic] (.6) of the Philadelphia Code to the extent that they limit fees for consensual tows; and
>
> 4. Defendant City of Philadelphia is PERMANENTLY ENJOINED from enforcing Sections 9-605(6) and 9-605(3)(c) [sic] (.6) of the Philadelphia Code to the extent that they limit the fees for consensual tows.

12. Subsequently, in June 2008, Tow Decision, Inc., a Philadelphia towing company, sued the City claiming that the City's revocation of its business privilege license due to "overcharging" on consensual tows directly violated Dalzell's Order. *Tow Decision v. City of Philadelphia* (2:08-cv-02958-GEKP).

13. According to the *Tow Decision* Complaint, Veronica Saunders, supervisor of the Business Compliance Unit for the City, "admitted that the City did not change its practices and procedures in light of the Dalzell Order" and that it was not obligated to

---

[1] 49 U.S.C. §14501(c)(1) prohibits states and municipalities from "enact[ing] or enforce[ing] a law, regulation, or other provision having the force and effect of law related to price, route, or service of any motor carrier . . . with respect to the transportation of property."

until the Code was amended (despite the specific language of 49 U.S.C. §14501(c)). See Tow Decision Complaint, ¶¶ 66 and 67.[2]

14.    In or before December 2015, the Towing Ordinance was amended and it eliminated fee limitations for consensual tows. Code §9-605(6)(a).

15.    The Towing Ordinance provides that "The limitations and requirements of this subsection 6(a) [Charges] shall not apply to . . . fees for consensual towing." Code §9-605(6)(a).

16.    Despite the law, the City did not change its practices and procedures and continued to, *de facto*, regulate and limit fees on consensual tows.

**The City's Current Practice with Consensual Towing Fees**

17.    Despite the local and federal laws, the City regulates and limits fees on consensual tows by unlawfully seizing consensually towed vehicles from plaintiff, including:

   a.    On December 15, 2016, the City seized one (1) vehicle for "violation of City Ordinance 9-605."

   b.    On December 19, 2016, the City seized one (1) vehicle for "violation of City Ordinance 9-605."

   c.    On December 22, 2016 the City seized one (1) vehicle for "violation of City Ordinance 9-605."

   d.    On February 24, 2017, the City seized six (6) vehicles for "violation of Code §9-605."

   e.    On April 27, 2017, the City seized one (1) vehicle for "overcharging under 9-605."

---

[2] The parties in *Tow Decision* entered into a Settlement Agreement.

18. On May 10, 2017, after several telephone and e-mail correspondence, the undersigned counsel e-mailed Edward Jefferson, senior attorney for the Code Enforcement Unit in Philadelphia and counsel for the City in *Tow Decision*. The substance of all of the correspondence with Mr. Jefferson related to the City's unlawful seizure of consensually towed vehicles, in disregard of the law and the Dalzell Order.[3] Mr. Jefferson did not reply or otherwise respond to that e-mail. A copy of Shari Amster's May 10, 2017 redacted e-mail to Mr. Jefferson is attached hereto as Exhibit "C" and incorporated herein by reference.

19. Within days, the City commenced seizing consensually towed vehicles under a different guise, but continued to *de facto* regulate and limit fees on consensual tows. The unlawful seizures of consensually towed vehicles from plaintiff include the following:

   a. On May 25, 2017, the City seized seven (7) vehicles for an alleged "theft and fraud" investigation.

   b. On October 3, 2017, the City seized one (1) vehicle for an alleged "theft and fraud" investigation.

20. The City never provided any basis to support alleged Code violations or theft or fraud.

21. On November 27, 2017, a detective from the Major Crimes Unit of Philadelphia telephoned Hooked and advised it that the City would seize another vehicle, a 2015 Chevrolet Volt, for a §9-605 violation due to overcharging.

---

[3] The correspondence related to the City's "enforcement" of the Towing Ordinance with Plaintiff and other towing companies, whose consensually towed vehicles the City had also seized and whom undersigned counsel represented at the time.

a. On November 28, 2017, the City unlawfully seized the consensually towed Chevrolet Volt from plaintiff for an alleged "wreck chased".

22. The Code does not provide for seizure of vehicles for solicitation (or "wreck chasing"). §9-605(14).

23. In violation of the law, the City seized nineteen (19) consensually towed vehicles from Plaintiff (the "Seized Vehicles"), without any payment or remuneration to Plaintiff. Copies of the City's Property Receipts for the Seized Vehicles are attached as Exhibit "D" and incorporated herein by reference.

24. The Seized Vehicles were property of Plaintiff and Plaintiff had a legitimate claim of entitlement to those vehicles.

25. The City seized all vehicles without requesting or reviewing any paperwork on the Seized Vehicles, including the Consensual Tow Agreements.

26. The city seized, without notice or opportunity to be heard, consensually towed vehicles from Plaintiff.

27. Plaintiff had a right to and interest in the Seized Vehicles and to collect the towing fees and associated revenues from the Seized Vehicles.

28. The City, directly or indirectly, released and/or returned the Seized Vehicles to its owners or other third parties, even those vehicles seized for an alleged "theft and fraud investigation."

29. The City did not provide Plaintiff with any opportunity to be heard or procedure to contest the seizure prior to returning the Seized Vehicles to its owners or other third parties.

30. The City deprived Plaintiff of its rights in the Seized Vehicles.

31. The City has engaged in a systematic course of conduct that limits fees for consensually towed vehicles and deprives Plaintiff of its property.

32. The City has engaged, and continues to engage, in a systematic course of conduct that violates the Code and other laws.

33. At all material times, the City knew or should have known that its practice of seizing consensually towed vehicles for alleged overcharging violates the Code and other laws.

34. At all material times, the City was subject to 42 U.S.C. §1983.

35. Acting under the color of law, the City operated to deny the rights, privileges or immunities of Hooked, Inc. secured under the Constitution and Laws of the United States, the Constitution and Laws of the Commonwealth of Pennsylvania and the Philadelphia Code as set forth above.

## CAUSES OF ACTION

### COUNT 1
### 42 U.S.C. § 1983 – Violation of Substantive Due Process

36. Plaintiff incorporates by reference the averments contained in the preceding paragraphs as though fully set forth herein.

37. The City does not have the power or authority to regulate towing fees for consensual towed vehicles under the Towing Ordinance, State or federal law.

38. The City violated the substantive due process rights of Hooked, Inc. by its acts as fully set forth above.

WHEREFORE, Plaintiff, Hooked, Inc., respectfully requests that judgment be entered in its favor and against Defendant, City of Philadelphia, in an amount in excess of $150,000 plus interest, costs and expenses, attorneys' fees and costs, punitive damages,

and all other relief that this Court deems just and proper. Plaintiff further requests a permanent injunction enjoining the City from regulating or limiting fees for consensual tows.

## COUNT II
### 42 U.S.C. § 1983 – Violation of Procedural Due Process

39.  Plaintiff incorporates by reference the averments contained in the preceding paragraphs as though fully set forth herein.

40.  The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits the City from depriving any person of life, liberty, or property without due process of law.

41.  The City violated the procedural due process rights of Hooked, Inc. by its acts as fully set forth above.

WHEREFORE, Plaintiff, Hooked, Inc., respectfully requests that judgment be entered in its favor and against Defendant, City of Philadelphia, in an amount in excess of $150,000 plus interest, costs and expenses, attorneys' fees and costs, punitive damages, and all other relief that this Court deems just and proper.

## COUNT III
### 42 U.S.C. § 1983 – Violation of Fourth Amendment rights

42.  Plaintiff incorporates by reference the averments contained in the preceding paragraphs as though fully set forth herein.

43.  The Fourth Amendment of the United States Constitution guarantees Plaintiff's rights against unreasonable searches and seizures.

44.   The City's conduct, by its acts as fully set forth above, resulted in a meaningful interference with Plaintiff's possessory interest in its property and violated Plaintiff's Fourth Amendment rights.

WHEREFORE, Plaintiff, Hooked, Inc., respectfully requests that judgment be entered in its favor and against Defendant, City of Philadelphia, in an amount in excess of $150,000 plus interest, costs and expenses, attorneys' fees and costs, punitive damages, and all other relief that this Court deems just and proper. Plaintiff further requests a permanent injunction enjoining the City from regulating or limiting fees for consensual tows.

Shari Amster (PA No. 72742)
Law Office of Shari Amster
265 South 21st Street
Philadelphia, PA 19103
267.475.7401
Attorney for Plaintiff Hooked, Inc.

Dated: December 1, 2017